ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VI

| | | |
|---|---|---|
| **ERIC MORALES BERRIOS**<br><br>Lesionada-Recurrida<br><br>**HOLSUM BAKERY**<br><br>Patrono<br><br>**COMISIÓN INDUSTRIAL DE PUERTO RICO**<br><br>Agencia-Recurrida<br><br>v.<br><br>**CORPORACIÓN DEL FONDO DEL SEGURO DEL ESTADO**<br><br>Recurrente | KLRA202500149 | **REVISIÓN** procedente de la **Comisión Industrial de Puerto Rico**<br><br>Caso Núm.:<br>**99-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-01**<br><br>Caso C:F.S.E.:<br>**98-23-00302-2**<br><br>Sobre:<br>Honorarios de Abogado |

Panel integrado por su presidenta, la Jueza Ortiz Flores, la Jueza Aldebol Mora y la Jueza Boria Vizcarrondo.

Boria Vizcarrondo, Jueza Ponente.

### SENTENCIA

En San Juan, Puerto Rico, a 17 de junio de 2025.

Comparece ante nos el Administrador de la Corporación del Fondo del Seguro del Estado (CFSE o parte recurrente) mediante el presente recurso de *Revisión Administrativa* y nos solicita que revoquemos la *Resolución en Reconsideración* emitida y notificada por la Comisión Industrial de Puerto Rico (Comisión Industrial) el 12 de febrero de 2025.[1] En la referida *Resolución en Reconsideración*, la Comisión Industrial de Puerto Rico ordenó al CFSE a pagar el equivalente de quince por ciento (15%) en honorarios de abogado, a la licenciada María Del Carmen Pagán.

Por los fundamentos que expondremos a continuación, revocamos a la Comisión Industrial.

---

[1] Apéndice de *Revisión Administrativa,* págs. 38-45.

Número Identificador
SEN2025 _____

# I

Los hechos ante nuestra consideración se originan por una reclamación presentada el 10 de septiembre de 1997 por Eric Morales Berríos (Morales Berríos u obrero) contra su patrono Holsum Bakery (Holsum o patrono) por un incidente laboral ocurrido el 17 de agosto de 1997.[2] El Sr. Morales Berríos alegó que estaba padeciendo de asma bronquial todos los días desde hacía tres a cuatro meses y que empeoraba cada vez que estaba trabajando.

El obrero lesionado fue evaluado por primera vez el 10 de septiembre de 1997 por el Doctor Jorge Santana.[3] El CFSE emitió una *Decisión* en la cual acogió la recomendación del doctor, en cuanto a que éste debía continuar recibiendo tratamiento médico en descanso.

Así las cosas, el 8 de junio de 1999 el CFSE emitió una segunda *Decisión* en la cual autorizaba al obrero lesionado a continuar recibiendo tratamiento médico C.T., mientras trabajaba.[4]

El 7 de julio de 1999 la licenciada María Del Carmen Pagán (licenciada Pagán) presentó una *Moción de Representación Legal.*[5] El mismo día, mediante la representación legal de la licenciada Pagán, el obrero presentó un *Escrito en Apelación,* en síntesis, alegó estar en contra de la decisión del CFSE.[6] Arguyó que necesitaba que se le suministrará el tratamiento para su condición en descanso, pues esta no había mejorado.

El 7 de diciembre de 1999, notificada el 16 del mismo mes y año, la Comisión Industrial emitió una *Resolución* mediante la cual revocó la *Decisión* emitida por el CFSE del 8 de junio de 1999 e impuso el pago de incapacidad transitorio.[7] Del mismo modo, fijó

---

[2] *Apéndice de Revisión Administrativa,* pág. 1.
[3] *Íd.* pág. 2.
[4] *Íd.* pág. 3.
[5] *Íd.* pág. 4.
[6] *Íd.* pág. 5.
[7] *Íd.* pág. 6.

honorarios a la licenciada Pagán equivalentes a un diez por ciento de cualquier compensación que pueda obtener el obrero lesionado como resultado del recurso, incluyendo dietas.

El 27 de junio de 2000 el CFSE emitió una *Decisión* en la cual se dio de alta al obrero, luego de su tratamiento, con incapacidad.[8]

El 21 de marzo de 2001, notificado el 16 de mayo de 2001, el CFSE otorgó incapacidad total permanente, con un diagnóstico de problemas respiratorios de Asma Bronquial al obrero.[9]

El 3 de enero de 2003, la licenciada Pagán presentó una *Moción Solicitando Pago de Honorarios*.[10]

Nuevamente, el 23 de agosto de 2016 la licenciada Pagán presentó una *Moción de Amparo al Artículo 7 de [sic] Mora*.[11] En el antedicho escrito expresó que fue notificada el 16 de mayo de 2001 de la *Decisión* del CFSE, sobre la incapacidad permanente en el presente caso. Adujo que el 3 de enero de 2003, radicó ante la CFSE una moción solicitando el pago de los honorarios de abogado y al día de la radicación del escrito no había recibido ninguna comunicación al respecto.

El 24 de julio de 2024 la licenciada Pagán presentó una *Segunda Moción de Amparo al Artículo 7 de [sic] Mora*.[12] En el referido escrito hizo referencia a los pasados intentos de solicitar el pago de honorarios de abogado, y que, a la fecha de la radicación del reciente escrito, la CFSE no había emitido ningún documento al respecto.

Así las cosas, el 8 de octubre de 2024, notificada el 1 de noviembre de 2024, la Comisión Industrial emitió una *Resolución* en la cual ordenó al CFSE a pagar el equivalente de quince por ciento (15%) en honorarios de abogado a la licenciada Pagán.[13]

---

[8] Apéndice de *Revisión Administrativa,* pág. 7.
[9] *Íd.* pág. 8.
[10] *Íd.* pág. 9.
[11] *Íd.* pág. 10.
[12] *Íd.* pág. 11.
[13] *Íd.* págs. 12-13.

Inconforme, el 15 de noviembre de 2024 la CFSE presentó una *Reconsideración*.[14] En síntesis, la CFSE arguyó, entre otras cosas, que la Comisión Industrial abusó de su discreción al otorgar honorarios de abogado a la licenciada Pagán sobre gestiones no realizadas por ésta, pues el reconocimiento de la incapacidad total al obrero fue producto de un ejercicio médico realizado por la propia CFSE en su jurisdicción, sin la gestión o intervención de dicha representación legal.

Finalmente, el 12 de febrero de 2025, notificada el mismo día, la Comisión Industrial emitió una *Resolución en Reconsideración* en la cual declaró No Ha Lugar la moción presentada por el CFSE.[15] La Comisión Industrial razonó que gracias a la labor que realizó la licenciada Pagán en la apelación, el obrero pudo volver al descanso y adelantó su causa hasta adquirir la incapacidad total. Por tal razón, resolvió que procedía la fijación de los honorarios de abogado a favor de la licenciada Pagán.

Inconforme, el 13 de marzo de 2025 acude ante nos la parte recurrente mediante el presente recurso de *Revisión Administrativa* y nos plantea la comisión de los siguientes errores:

> ERRÓ LA HONORABLE COMISIÓN INDUSTRIAL AL ABUSAR DE SU DISCRECIÓN Y OTORGAR HONORARIOS DE ABOGADOS A LA REPRESENTACIÓN LEGAL POR GESTIONES NO REALIZADAS.
>
> ERRÓ LA HONORABLE COMISIÓN INDUSTRIAL AL DISPONER SOBRE ASUNTOS QUE FUERON ATENDIDOS Y DISPUESTOS POR LA CFSE, NOTIFICADAS MEDIANTE DECISIÓN DEL ADMINISTADOR Y QUE NO FUERON OPORTUNAMENTE APELADAS, POR LO QUE CARECE DE JURISDICCIÓN PARA ATENDER SOBRE LAS MISMAS.
>
> ERRÓ LA HONORABLE COMISIÓN INDUSTRIAL AL APARTARSE DE LA JURISPRUDENCIA INTERPRETATIVA, CONTRARIO A LO RESUELTO POR ESTE TRIBUNAL DE APELACIONES EN EL CASO XIOMARA CRUZ V. CFSE, KLRA201800598.

---

[14] *Apéndice de Revisión Administrativa.* págs. 15- 36.
[15] *Íd.* págs. 38-45.

El 17 de marzo de 2025 emitimos una *Resolución* en la cual otorgamos a la parte recurrida hasta el 14 de abril de 2025 para presentar su alegato en oposición.

Trascurrido el término sin la comparecencia de la parte recurrida, procedemos a resolver sin su comparecencia.

**II**

**A**

El Artículo 4.006 (c) de la *Ley de la Judicatura* de 2003, Ley Núm. 201-2003,4 LPRA sec. 24y, faculta al Tribunal de Apelaciones a atender las decisiones, órdenes y resoluciones finales de organismos o agencias administrativas. Al momento de revisar una decisión administrativa, el principio rector es el criterio de la razonabilidad de las decisiones y actuaciones de la agencia. *Hernández Feliciano v. Mun. Quebradillas, 211 DPR 99 (2023); Torres Rivera v. Policía de PR, 196 DPR 606 (2016); IFCO Recycling v. Aut. Desp. Sólidos, 184 DPR 712 (2012).* Todas las decisiones administrativas gozan de una presunción de legalidad y corrección, por lo cual la parte que las impugne debe producir suficiente evidencia para derrotarla. *Íd.*

Las facultades adjudicativas de una agencia están regidas por la *Ley de Procedimiento Administrativo Uniforme* (LPAU), supra, y por la jurisprudencia aplicable. La Sección 3.1 de la LPAU, 3 LPRA sec. 9641, requiere que las agencias fundamenten sus resoluciones con determinaciones de hecho y conclusiones de derecho. Estas determinaciones deben reflejar que se consideraron y resolvieron los conflictos de prueba y, además, deben describir tanto los hechos probados como los rechazados. *Empresas Ferrer v. A.R.Pe.,* 172 DPR 254, 265 (2007). Por lo tanto, la facultad revisora de los tribunales se enfoca en determinar: (1) que el remedio concedido por la agencia fuese el apropiado; (2) si las determinaciones de hecho estuvieron

basadas en evidencia sustancial que obre en el expediente administrativo; y (3) si las conclusiones de derecho fueron correctas mediante su revisión completa y absoluta. Se. 4.5 de LPAU, 3 LPRA sec.9675.

Sobre nuestra facultad revisora, el Tribunal Supremo ha expresado que, al revisar las determinaciones de hechos, los tribunales solo pueden sustituir su criterio por el de la agencia cuando las determinaciones no están fundamentadas en evidencia sustancial. *Hernández Feliciano v. Mun. Quebradillas*, supra, pág. 115. "Evidencia sustancial es 'aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión'". *Empresas Ferrer v. A.R.Pe.*, supra, pág. 266 (citando a *Hernández, Álvarez v. Centro Unido*, 168 DPR 592, 615 (2006)). La parte que impugne una determinación "tiene que convencer al tribunal de que la evidencia en la cual se apoyó la agencia para formular tales determinaciones no es sustancial". *Otero v. Toyota*, 163 DPR 716, 728 (2005).

Por otro lado, en *Vázquez v. Consejo de Titulares*, 2025 TSPR 56 (2025), nuestro máximo foro revisitó el trato que los tribunales han de concederle a las determinaciones de hecho de las agencias administrativas. Lo anterior, a la luz del marco jurídico provisto por el Artículo 4.5 de la LPAU, supra, sec. 9675, y lo resuelto por el Tribunal Supremo de los Estados Unidos en *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024).

Según dicho artículo, supra, las conclusiones de derecho "serán revisables en todos sus aspectos por el tribunal". Nuestro máximo foro indicó que, en reiteradas ocasiones, sostuvo que las conclusiones e interpretaciones de las agencias merecían gran consideración, y que la revisión judicial se limitaba a determinar si estas habían actuado arbitraria o ilegalmente. *Vázquez v. Consejo de Titulares*, supra. Sin embargo, advirtió que esta consideración no

equivalía a una renuncia de nuestra función revisora. Conforme a *Loper Bright Enterprises v. Raimondo*, supra, el Tribunal Supremo de Puerto Rico concluyó que la interpretación de la ley "es una tarea que corresponde inherentemente a los tribunales". *Vázquez v. Consejo de Titulares*, supra. Por lo tanto, será deber de los tribunales revisar las conclusiones de derecho de las agencias en todos sus aspectos, guiados por los mecanismos interpretativos propios de los tribunales y no de las agencias.

Conforme a la nueva normativa, los tribunales locales deben ejercer un juicio independiente al de la agencia administrativa, cuando les corresponde decidir si una agencia ha actuado dentro del marco de las facultades que se le han delegado estatutariamente. *Vázquez v. Consejo de Titulares*, supra. Pero, contrario a la práctica pasada, los tribunales no vienen obligados a darle deferencia a las interpretaciones de derecho realizadas por las agencias administrativas simplemente cuando la ley es ambigua. *Íd.* Interprestando *Loper Bright Enterprises v. Raimondo*, supra, concluye que esto es así, pues son los tribunales, bajo su función judicial, los que deben ejercer un juicio independiente al determinar el significado de las disposiciones estatutarias interpretadas por las agencias administrativas. *Íd.* El Tribunal Supremo aclara, que al ejercer dicho criterio los tribunales pueden apoyarse de las interpretaciones realizadas por las agencias, pues son estas las que tienen responsabilidad de aplicar ciertas leyes. *Íd.* No obstante, expresa que:

> ...tales interpretaciones "constituyen un acervo de experiencias y criterios informados a los cuales los tribunales y los litigantes bien podrán recurrir a modo de guía" de conformidad con la APA; y no avalar ciegamente, como se solía hacer en el pasado. *Íd.*

**B**

La Constitución del Estado Libre Asociado de Puerto Rico en su Artículo II, sección 16, reconoce el derecho de todo trabajador de

estar protegido contra riesgos sobre su salud o integridad personal en su lugar de trabajo o empleo. A raíz de este mandato, se aprobó la Ley Núm. 45 del 18 de abril de 1935, mejor conocida como la *Ley del Sistema de Compensaciones por Accidentes del Trabajo*, 11 LPRA sec. 1. Este estatuto es de carácter remedial y brinda garantías y beneficios a los obreros en el contexto de accidentes y enfermedades ocupacionales que ocurran en su empleo. *Hernández Morales et al. v. C.F.S.E.*, 183 DPR 232, 240 (2011). En específico, establece un sistema de seguro compulsorio y exclusivo para compensar a aquellos obreros que sufran lesiones, enfermedades o pierdan la vida en el curso de su empleo, por un acto o función inherente a este y como consecuencia de este. *Íd.* Del mismo modo, le brinda a los empleados un remedio de carácter rápido, eficiente y libre de las complejidades de una reclamación ordinaria en daños y perjuicios. *Íd.*

Como parte de los remedios reconocidos a todo obrero o empleado que sufriese una lesión o enfermedad ocupacional, en la Ley Núm. 45 del 18 de abril de 1935 en su Artículo 3, 11 LPRA sec. 3, se encuentran la asistencia médica, incapacidad transitoria, incapacidad parcial o total permanente y compensación por muerte.

Para la otorgación de los servicios de compensaciones a obreros y empleados bajo la Ley Núm. 45 del 18 de abril de 1935, 11 LPRA sec. 8, se crearon la Comisión del Fondo del Seguro del Estado, con la Oficina del Administrador, y la Comisión Industrial. La Comisión del Fondo del Seguro del Estado es el foro primario donde se dilucida si un obrero es elegible o no a los beneficios que establece el estatuto, a su vez, está encargada de "la investigación de las reclamaciones por accidentes del trabajo, de la rehabilitación a través de servicios médicos y del pago de compensación por incapacidad parcial o total". *Agosto Serrano v. F.S.E.*, 132 DPR 866, 874. Por otro lado, la Comisión Industrial es el organismo

adjudicativo y revisor, que esencialmente funciona como el foro apelativo del CFSE a nivel administrativo. *Íd.* pág. 875. Es decir, la Comisión Industrial es el ente que revisa las determinaciones realizadas por la CFSE de si un obrero o empleado es elegible o no a los beneficios de una incapacidad total dentro del contexto del Artículo 3 de la Ley Núm. 45 del 18 de abril de 1935, *supra.*

Respecto a la representación legal de un obrero o empleado ante el procedimiento establecido en la Ley Núm. 45 del 18 de abril de 1935, *supra*, el Artículo 33 dispone lo siguiente:

> **Los obreros o empleados no necesitarán comparecer asistidos de abogados ante el Administrador del Fondo del Estado o ante la Comisión Industrial para la gestión, liquidación o resolución de sus casos**, pero **si decidieren obtener los servicios de un abogado para la mejor dirección y defensa de sus casos, la Comisión Industrial fijará el tanto por ciento que deba pagársele al abogado en la gestión de una reclamación en favor del empleado u obrero o sus herederos o beneficiarios, de acuerdo con las disposiciones de esta Ley**.

> **En tales casos la Comisión Industrial fijará con cargo al Fondo del Seguro del Estado, el tanto por ciento que deba corresponder al abogado como honorarios**. Los gastos en que incurra el Fondo del Seguro del Estado en virtud de esta disposición se sufragarán de las primas de seguro pero no se tomarán en consideración para los fines del plan de clasificación basado en la experiencia (Merit Rating System). En los casos de patronos no asegurados, en violación de la ley, el cargo se hará al patrono no asegurado, cuando el obrero ganare el caso. No se permitirá bajo ninguna circunstancia la comparecencia de agentes u otras personas en ningún caso en reclamación ante la Comisión Industrial a menos que se trate de un menor o incapacitado en el cual caso la persona que represente al menor o incapacitado no podrá cobrar suma alguna ni recibir remuneración alguna de ninguna índole por representar o ayudar en su reclamación de compensación al interesado.

> En los casos que sean objeto de revisión ante los tribunales y en los de mandamus autorizados por esta Ley en que se utilicen los servicios de un abogado, el tribunal ante la cual se vea el caso fijará los honorarios que equitativamente debe recibir el abogado, con cargo al Fondo del Seguro del Estado. En los casos de patronos no asegurados, en violación de la ley, el cargo se hará al patrono no asegurado, cuando el obrero ganare el caso.

Los honorarios fijados por la Comisión Industrial o el tribunal serán los únicos que podrá percibir el abogado que preste sus servicios. (Énfasis Suplido)

Artículo 33 de la Ley Núm. 45 del 18 de abril de 1935, 11 LPRA sec. 36.

Como parte de su interés en regular el procedimiento de imposición de honorarios de abogados, la Comisión Industrial en la Regla 39 de las Reglas de Procedimiento de la Comisión Industrial de Puerto Rico, Reglamento Núm. 9464 del 26 de mayo de 2023, dispone que ningún abogado podrá solicitar ni aceptar pago alguno del obrero o empleado lesionado por servicios profesionales prestados ante el Asegurador o la Comisión. De la misma forma expone lo siguiente:

39.1- Honorarios de abogado por servicios profesionales prestados cuando dichos servicios redundan en compensación o beneficio al lesionado.

La Comisión fijará el por ciento (%) que se le pagará a la representación legal del lesionado apelante o sus beneficiarios, como resultado de la gestión legal realizada por este que haya redundado o pueda redundar en compensación o beneficio a favor de dicha parte. La Comisión procederá a la fijación de los honorarios al momento de resolver el caso, con cargo a la CFSE. En ningún caso los pagos por este concepto serán descontados de la compensación o beneficio adjudicado al lesionado o a sus beneficiarios. Los honorarios fijados por la Comisión o el Tribunal, en caso de revisión, serán los únicos que podrá recibir el abogado por sus servicios profesionales.

Toda moción solicitando fijación de honorarios de abogado, incluirá la fecha en que el abogado asumió la representación y el desglose de las gestiones realizadas a favor del lesionado apelante que hayan redundado en compensación o beneficio para este. La moción estará acompañada de todo documento que justifique la fijación de los honorarios solicitados.

Regla 39.1 de Reglamento Núm. 9464, supra.

Sobre la fijación de honorarios, la Regla 39.2 del Reglamento Núm. 9464, *supra*, establece lo siguiente:

39.2- Fijación de Honorarios
La Comisión fijará honorarios por las gestiones profesionales realizadas ante sí o ante el Asegurador. Los honorarios se fijarán a base de un por ciento (%), según se dispone más adelante, por la compensación o beneficio devengado o que pudiera obtener el lesionado

o sus beneficiarios. Estos honorarios no excederán de cinco mil dólares ($5,000.00) por gestión en cada caso.

En la Regla 39.3 del Reglamento Núm. 9464, *supra*, se establecen los criterios para la fijación de honorarios en porcentajes, sobre esto se dispone lo siguiente:

39.3- Fijación Porcentual

La Comisión utilizará los siguientes criterios para la fijación del por ciento (%) de honorarios de la compensación o beneficio otorgado al apelante.

1. En los casos de incapacidad parcial permanente:

   a. Por los servicios prestados ante el Asegurador se fijará un diez por ciento (10%) del total de la compensación o beneficio otorgado.

   b. Por los servicios prestados ante la Comisión se fijará un quince por ciento (15%) de la compensación o beneficio otorgado en vista médica.

   c. Por los servicios prestados ante la Comisión se fijará un veinte por ciento (20%) de la compensación o beneficio otorgado en vista púbica.

2. En los casos de incapacidad total o muerte:

   a. Por los servicios prestados ante el Asegurador, se fijará un diez por ciento (10%) del total de la compensación o beneficio otorgado al lesionado o a sus beneficiarios (calculado a base de la pensión que habrá de recibir el lesionado o sus beneficiarios durante los primeros diez (10) años).

   b. Por servicios prestados ante la Comisión se fijará un quince por ciento (15%) de la compensación o beneficio otorgado en la vista médica.

   c. Por servicios prestados ante la Comisión se fijará un veinte por ciento (20%) de la compensación o beneficio otorgado en vista pública. En los casos de pagos pendientes, el por ciento (%) se computará tomando como base el monto de los pagos que correspondan al lesionado o a sus beneficiarios durante el periodo de los primeros diez (10) anos.

El término para el pago de los honorarios queda establecido en la Regla 39.4 del Reglamento Núm. 9464, *supra*, sobre el mismo expone que:

39.4- Término para el Pago de los Mismos

En la primera fijación de honorarios, se procederá a establecer un término límite de sesenta (60) días a la CFSE para cumplir con dicha orden.

Luego de pasado ese término, a petición de parte a la Comisión Industrial, esta ordenará la imposición de sanciones económicas a la CFSE a favor de la representación legal.

Ningún Oficial Examinador, Comisionado o Abogado de esta agencia, podrá ignorar una solicitud o moción sobre honorarios de abogados. Al atender dichas mociones, tendrá la obligación de aplicar estrictamente lo aquí expuesto.

En la alternativa, la Comisión Industrial podrá presentar ante la Comisión para Resolver Controversias sobre Pagos y Deudas entre Agencias Gubernamentales, una petición contra la CFSE, por estar lesionando los servicios esenciales que presta la Comisión Industrial, solicitando el monto de la cantidad adeudada y el método de pago (3 L.P.R.A. § 1753).

**III**

Luego de analizar el derecho expuesto, nos encontramos en posición de resolver. En síntesis, la parte recurrente nos plantea en primera instancia, que la Comisión Industrial de Puerto Rico erró al otorgar honorarios de abogados a la licenciada Pagán por la representación legal del obrero por gestiones no realizadas. Del mismo modo, nos señala que la Comisión Industrial de Puerto Rico incidió al disponer sobre asuntos que fueron atendidos, dispuestos y notificados por la CFSE que no fueron oportunamente apelados, por lo que carecía de jurisdicción. Finalmente, nos plantea que la Comisión Industrial de Puerto Rico erró al apartarse de la jurisprudencia interpretativa sobre la imposición de honorarios de abogado. Procedemos a atenderlos de manera conjunta.

Es norma reiterada en nuestro ordenamiento jurídico que el Tribunal de Apelaciones está facultado para atender las decisiones, órdenes y resoluciones finales de los organismos o agencias administrativas. Al momento de revisar una decisión administrativa, el principio rector es el criterio de la razonabilidad de las decisiones y actuaciones de la agencia. La facultad revisora de los tribunales apelativos se enfoca en determinar: (1) que el remedio concedido por la agencia fuese el apropiado; (2) si las determinaciones de hecho

estuvieron basadas en evidencia sustancial que obre en el expediente administrativo; y (3) si las conclusiones de derecho fueron correctas mediante su revisión completa y absoluta.

La Ley Núm. 45 del 18 de abril de 1935, *supra*, establece un sistema de seguro compulsorio y exclusivo para compensar a aquellos obreros que sufran lesiones, enfermedades o pierdan la vida en el curso de su empleo, por un acto o función inherente a este o como consecuencia de éste. Para la otorgación de estos servicios de compensaciones, la Ley Núm. 45 del 18 de abril de 1935, *supra*, creó dos organismos administrativos: (1) la CFSE, con la Oficina del Administrador, y (2) la Comisión Industrial. En primera instancia, la CFSE funge como foro primario donde se dilucida la elegibilidad de un obrero a los beneficios que establece el estatuto. Mientras que la Comisión Industrial es el organismo adjudicativo y revisor, que funciona como el foro apelativo del CFSE a nivel administrativo.

Los obreros y empleados que pretendan acogerse al procedimiento reconocido en la Ley Núm. 45 del 18 de abril de 1935, *supra*, no están obligados a comparecer asistidos de abogados ante el Administrador del Fondo del Estado o ante la Comisión Industrial para la gestión, liquidación o resolución de sus casos. No obstante, si estos empleados u obreros desean obtener los servicios de un abogado para la mejor dirección y defensa de sus casos, **la Comisión Industrial fijará "el tanto por ciento" de honorarios que deba pagársele al abogado en la gestión de una reclamación en favor del empleado u obrero**.

Del mismo modo, la Regla 39.1 del Reglamento Núm. 9464, *supra*, establece que la Comisión Industrial fijará el por ciento que se le pagará a la representación legal del lesionado apelante, como resultado de la gestión legal realizada por este que haya redundado o pueda redundar en compensación o beneficio a favor de dicha parte.

En el caso ante nuestra consideración, la licenciada Pagán asumió la representación legal del obrero para apelar la *Decisión* emitida por el CFSE, el 8 de junio de 1999, en la cual autorizaba al obrero lesionado a continuar recibiendo tratamiento médico mientras trabajaba.[16] A raíz de esta gestión, la Comisión Industrial emitió una *Resolución mediante* la cual revocó la *Decisión* emitida por el CFSE, con derecho al pago de incapacidad transitoria e impuso honorarios de abogado a la licenciada Pagán.[17] Luego de recibir el tratamiento, el CFSE notificó una tercera *Decisión* en la que dio de alta al obrero con incapacidad.[18] Finalmente, el 16 de mayo de 2001 el CSFE otorgó incapacidad total permanente al obrero por sus problemas respiratorios de asma bronquial.[19]

Tomando en consideración lo antes expuesto, las solicitudes presentadas por la licenciada Pagán en los años 2003, 2016 y 2024 y tras un estudio exhaustivo del legajo administrativo, no encontramos justificable la fijación de honorarios de abogado a la licenciada Pagán. Esto es así, pues quedó claro que la labor realizada por la licenciada Pagán respecto al obrero se circunscribió a realizar una apelación a la *Decisión* emitida por el CFSE, el 8 de junio de 1999. Concluir que la labor realizada por la licenciada Pagán en su apelación adelantó la causa del obrero hasta adquirir la incapacidad total, como lo hizo la Comisión Industrial, no es correcta. Si bien, el trabajo realizado por la licenciada Pagán permitió que el obrero pudiera volver al descanso, el reconocimiento de la incapacidad total permanente al obrero fue producto de un ejercicio médico realizado por la propia agencia administrativa sin la gestión o intervención de la licenciada Pagán. Por tanto, conforme a lo dispuesto en la Ley Núm. 45 del 18 de abril de 1935, *supra*, y el

---

[16] Véase, *Apéndice de Revisión Administrativa,* pág. 3-5.
[17] *Íd.* pág. 6.
[18] *Íd.* pág.
[19] *Íd.* pág. 8.

Reglamento Núm. 9464, *supra*, no procedía la concesión de honorarios de abogados a la licenciada Pagán, por lo que procede la revocación de las resoluciones emitidas por la Comisión Industrial.

**IV**

Por los fundamentos antes expresados, revocamos a la Comisión Industrial.

Lo acordó y manda el Tribunal y lo certifica la Secretaria.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones